**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| MORY DIARRASSOUBA, | : | CIVIL ACTION NO. 12-2257 (MLC) |
| | : | |
| Petitioner, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**COOPER, District Judge**

This matter was initiated as a <u>pro se</u> motion of Mory Diarrassouba ("Petitioner") to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255

Motion"). The underlying criminal case in this Court was <u>United States v. Diarrassouba</u>,

Crim. No. 11-12 (MLC), in which Petitioner pleaded guilty to one count of conspiracy to

falsely alter United States Postal Service money orders in violation of 18 U.S.C. § 371, a

Class D Felony. Petitioner seeks to vacate his conviction, contending that he was not

informed by his defense attorney that a guilty plea would likely result in his deportation.

This Court notified the parties, after reviewing the entire record, that it lacks

jurisdiction under 28 U.S.C. § 2255, because Petitioner was not "in custody" on the

underlying conviction at the time he filed the Motion. (Memorandum Opinion, docket

entry no. ("dkt") 19.) We simultaneously issued an Order to Show Cause notifying

Petitioner that he may request that the action be treated as a petition for a writ of error

<u>coram nobis</u> under 28 U.S.C. § 1651(a), upon the papers already submitted. (Dkt. 20.)

Petitioner responded with a motion that the matter be adjudicated on that jurisdictional basis (dkt. 21), which motion will be granted. However, for the reasons set forth here, the Court concludes that even when treated as a petition for a writ of error <u>coram nobis</u>, the relief requested in the Petition must be denied.

## BACKGROUND

The records filed in this action[1] and in the underlying criminal action[2] provide the background and all pertinent facts.

Petitioner states that he is a citizen of Ivory Coast who was admitted to the United States on a visitor visa in 1990, and his status was adjusted to Legal Permanent Resident (CR6) on June 14, 1995. (Dkt. 1-1 at 2.) On January 7, 2011, he pleaded guilty to conspiracy to falsely and materially alter United States Postal Service money orders,

---

[1] The pertinent records filed under this docket number (Civil No. 12-2257) are the following numbered docket entries ("dkt."): Original Section 2255 Motion, filed on 4-16-2012 (dkt. 1); Petitioner's Memorandum of Law in Support of Section 2255 Motion (dkt. 1-1); <u>Miller</u> notice (dkt. 2); Second <u>Miller</u> notice and Order of consolidation (dkt. 7); Order setting schedule for filing of Answer and Reply (dkt. 9); Notice of Change of Address (dkt. 10); Motion to Appoint Counsel (dkt. 11); Respondent's Answer (dkt. 13); Opinion and Order denying Motion to Appoint Counsel without prejudice and setting schedule for filing of supplemental briefs (dkt. 14 and 15); Petitioner's Supplemental Brief (dkt. 17); and Respondent's Supplemental Brief (dkt. 18). Petitioner filed a second Section 2255 Motion on 5-30-2012, which was assigned Civil No. 12-3220 ("Second 2255 Motion"). That action was consolidated into the first action by the Order entered on that docket at docket entry 3, identical to the Order entered on the docket of Civil No. 12-2257 at docket entry 7. <u>See</u> n.7 <u>infra</u> for a summary of the procedural history.

[2] The pertinent records filed in the underlying criminal action, Crim. No. 11-12 (MLC), are the following numbered docket entries ("crim. dkt."): Information (crim. dkt. 26); Plea Agreement (crim. dkt. 30); Transcript of Plea Hearing (crim. dkt. 35); Judgment of Conviction (crim. dkt. 32); Transcript of Sentencing Hearing (crim. dkt. 36); Notice of Appeal (crim. dkt. 33); and Certified Order of United States Court of Appeals for the Third Circuit, dismissing appeal as untimely (crim. dkt. 37).

contrary to 18 U.S.C. § 500, in violation of 18 U.S.C. § 371.  (Crim. dkt. 26 and 35.)  The guilty plea was entered during a thorough Rule 11 hearing, during which the Court reviewed with Petitioner and both counsel the written plea agreement, which was entered on the docket.  (Plea Agreement, crim. dkt. 30; Transcript of Plea Hearing, crim. dkt. 35.)  See Discussion, infra.

The sentencing hearing was conducted on June 23, 2011.  (Crim. dkt. 36.)  This Court conducted the sentencing hearing in three distinct steps, as required under post-Booker sentencing procedures.  United States v. Booker, 543 U.S. 220 (2005).  Consistent with the parties' stipulations in the plea agreement and the recommendations in the Presentence Report, we calculated Petitioner's advisory guidelines range for imprisonment to be 18 to 24 months, based on a total offense level of 15 and criminal history category I.  (Crim. dkt. 36 at 5-6.)[3]  Next, the government moved for downward departure based on substantial assistance pursuant to USSG § 5K1.1, and recommended a sentence of time served.  At that point, Petitioner had been in custody on the criminal charge for about 14½ months.  (Id. at 8-9.)  We granted a downward departure to offense level 12, resulting in an advisory range for imprisonment of 10 to 16 months.  (Id.)  At the final step of the sentencing hearing, both counsel recommended a sentence of time

---

[3]  The total offense level was calculated, under the applicable November 1, 2010 edition of the United States Sentencing Guidelines ("USSG"), as follows:   Base offense level 6 (USSG § 2B1.1(a)(2)); 12-level upward adjustment based on stipulated loss amount of more than $200,000 and less than $400,000 (USSG § 2B1.1(b)(1)(G)); 3-level downward adjustment for acceptance of responsibility (USSG §§ 3E1.1(a) and (b)); total offense level 15.  (Crim. dkt. 36 at 4-5.)

served, with no term of supervised release, which the Court granted.  (Id. at 9-14.)  We also waived any fine, but did impose a stipulated restitution figure of $392,646.05, payable in installments of $50.00 per month.  (Id. at 7, 14-15; crim. dkt. 32 at 1-5.)

Petitioner's defense counsel informed the Court during the sentencing hearing that she had been informed, that very day, that an Immigration and Customs Enforcement ("ICE") detainer had been placed on her client.  (Crim. dkt. 36 at 12-13.)  As the prosecutor explained at the sentencing hearing, once the time-served sentence was imposed in the criminal case, the custody of Petitioner would be transferred from the U.S. Marshals Service (which was holding him in the criminal case) to the ICE agency, which would hold him under the immigration detainer.  (Id. at 13.)[4]  The Judgment of Conviction was signed and filed on the same day as the sentencing hearing itself, June 23, 2011.  (Crim. dkt. 32.)    Thus, as of June 24, 2011, Petitioner was no longer incarcerated in the criminal case and he had been taken into ICE custody as an immigration detainee.

---

[4]  That topic was covered during the sentencing hearing when this Court inquired:

COURT: . . . Has anyone inquired of the marshal whether they can convey Mr. Diarrassouba to immigration authorities if we terminate his involvement here?

PROSECUTOR:  Judge, I spoke with the marshals earlier today.  They are aware of the immigration detainer and apparently both the marshal service and ICE use Monmouth County jail as a holding location.  And so, my understanding from my conversation with the marshals is they would simply return him to Monmouth County jail and, at that time, he would be in ICE custody rather than marshals custody until he can work out the immigration issues with ICE.

(Crim. dkt. 36 at 13.)

The following year, on March 23, 2012, Petitioner signed and delivered to the ICE internal mailing system for delivery to this Court two filings, each of which was docketed upon receipt on April 16, 2012.  The first was captioned and docketed as a Notice of Appeal in his criminal case.  (Crim. dkt. 33.)  The second was his Section 2255 Motion ("Petition"), which commenced this action, accompanied by a supporting brief.  (Dkt. 1 and 1-1.)  Both were mailed from his location of ICE detention, the Essex County Correctional Facility ("ECCF") at 356 Doremus Avenue, Newark, New Jersey.  (See crim. dkt. 33 at 1-2; dkt. 1 at 1.)[5]

The Court of Appeals dismissed Petitioner's direct appeal as untimely, ruling that:

> Appellant seeks review of the June 23, 2011 judgment.  The government objects to the timeliness of the appeal from the judgment....  The notice of appeal from judgment was not filed until March 23, 2012, or 274 days after judgment was entered.  This period of time far exceeds the 14 days provided by applicable Rules.  See Fed.R.App.P. 4(b)(1).  Accordingly, the government's motion is granted and the appeal is dismissed.

(Crim. dkt. 37.)[6]

---

[5] Petitioner was later released from ICE detention, and on October 9, 2012 he filed a notice of change of address giving a street address in New York City.  (Dkt. 10.)  He stated in a subsequent filing that his release date from that detention was September 21, 2012.  (Dkt. 11 at 1.)  His ICE release date does not affect our analysis, because subject matter jurisdiction is determined as of the date an action is commenced.  See Maleng v. Cook, 490 U.S. 488, 490-91 (1989), discussed infra.

[6] We note that the Court of Appeals referred to March 23, 2012 as the "filing date" of Petitioner's Notice of Appeal, despite the fact that it was not actually received and docketed in this Court until April 16, 2012.  This reflects the so-called "mailbox rule" for inmate filings announced in Houston v. Lack, 487 U.S. 266 (1988), and codified as to the time for filing a notice of appeal in Fed.R.App.P. 4(c)(1).

This Court promptly reviewed the Section 2255 Motion, which was set forth on the standard form for federal inmates supplied by the Clerk, see L.Civ.R. 81.2(a), and issued a Miller Notice and Order on April 25, 2012.  (Dkt. 2.)  The balance of the procedural history of this action is summarized in the margin.[7]

---

[7]  Petitioner's original Section 2255 Motion, docketed in this action on April 16, 2012, contains one claim, alleging ineffective assistance of counsel for failure to advise of the mandatory deportation consequences of his guilty plea and conviction.  (Dkt. 1 at 4, 9.)  Petitioner relies on Padilla v. Kentucky, 559 U.S. 356 (2010) in support of that claim ("Padilla claim").  (Dkt. 1-1.)  We issued a standard Miller Notice and Order, filed on April 25, 2012, setting a date of June 12, 2012 for Petitioner to respond if he wished to do so.  (Dkt. 2.)  Instead of responding to that Miller Notice and Order, Petitioner filed another Section 2255 Motion (again on a standard federal inmate Section 2255 form), which was docketed as the Second 2255 Motion on May 30, 2012.  (See Civil No. 12-3220 (MLC), dkt. entry no. 1.)  That Second 2255 Motion did not contain the Padilla claim; in fact, Ground One on the form was left blank.  (Id. at 5-6.)  Instead, it set forth Ground Two (objecting to the 12-level loss amount upward adjustment, see n.3 supra); and Ground Three (objecting to the restitution obligation).  (Id. at 6-9.)  We then issued a Second Miller Notice and Order consolidating the two actions and notifying Petitioner that unless he filed one single all-inclusive Section 2255 motion in this action by September 4, 2012, only the original Section 2255 Motion would be ruled upon.  (Dkt. 7.)  When Petitioner did not respond to that Second Miller Notice and Order, we issued an Order on September 12, 2012, directing Respondent to file its answer responding only to the allegations in the original Section 2255 Motion within 45 days, and stating that Petitioner could file a reply within 30 days after receiving Respondent's answer.  (Dkt. 9.)  Respondent filed its timely Answer on October 26, 2012.  (Dkt. 13.)  Meanwhile, Petitioner had filed a motion for appointment of counsel, and he filed no reply brief.  (Dkt. 11.)  The Opinion and Order denying that motion without prejudice, filed on June 3, 2013, directed the parties to file supplemental briefs addressing the issue of retroactivity of Padilla, in light of Chaidez v. United States, 133 S.Ct. 1103 (2013).  (Dkt. 14 and 15.)  Petitioner filed a motion for extension of time to file his supplemental brief on July 8, 2013 (dkt. 16), which we granted nunc pro tunc.  Petitioner's Supplemental Brief was filed on August 12, 2013.  (Dkt. 17.)  Respondent's opposing brief was filed on September 5, 2013.  (Dkt. 18.)  All of the briefing was on the substantive issues; both parties assumed without discussing the Court's subject matter jurisdiction.  Upon review of the full briefing materials, we discovered the jurisdictional issue preventing us from adjudicating the Petition as filed, under 28 U.S.C. § 2255, whereupon we issued a Memorandum Opinion and accompanying Order To Show Cause, informing Petitioner that he could request the matter to be treated as a coram nobis petition, to be adjudicated on the existing papers.  (Dkt. 19, 20.)  Petitioner responded with his motion for the matter to be adjudicated as a coram nobis petition.  (Dkt. 21.)  We hereby grant that motion, analyzing the case as a coram nobis petition in this Memorandum Opinion.

**DISCUSSION**

The Petition in this case, originally filed as a motion under 28 U.S.C. § 2255, has been recharacterized by this Court, with the consent of Petitioner, based upon our finding that Petitioner was not "in custody" within the meaning of 28 U.S.C. § 2255 when the Petition was filed here.  See n.7 supra.  This Court does have jurisdiction over the matter as a petition for a writ of error coram nobis, under the All Writs Act, 28 U.S.C. § 1651(a), and it will be adjudicated as such.  (See dkt. 19 at 9-12.)

The United States Supreme Court observed in Chaidez v. United States, 133 S.Ct. 1103 (2013), where petitioner challenged her federal conviction for mail fraud after her sentence was fully served and she was facing deportation proceedings, that a petition for a writ of coram nobis is an appropriate procedural vehicle for such a challenge:

> A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person, like Chaidez, who is no longer "in custody" and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241.  See United States v. Morgan....  Chaidez and the Government agree that nothing in this case turns on the difference between a coram nobis petition and a habeas petition, and we assume without deciding that they are correct.

Id. at 1106 n.1.

Coram nobis, similar to habeas corpus itself, "is an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope."  United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989).  The case law generally states that the standard for granting a writ of error coram nobis "is even more stringent than that on a petitioner seeking

habeas corpus relief under § 2255." Id.  However, when a Padilla claim is the type of claim asserted, the Supreme Court observed in Chaidez that the standard for deciding a coram nobis petition is the same as it would be under 28 U.S.C. § 2255.  There, the Supreme Court made the above-quoted statement about the lack of difference between the two types of proceedings in that context.  Chaidez, 133 S.Ct. at 1106 n.1.

The burden of proof is on Petitioner in a coram nobis proceeding, as it is under Section 2255.  Thus, on a coram nobis petition, "[e]arlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise."  Stoneman, 870 F.2d at 106.[8]  Upon review of the motion papers and the underlying criminal case, this Court finds that an evidentiary hearing is not required and the matter should be adjudicated on the papers.  See United States v. McCoy, 410 F.3d 124, 131-35 (3d Cir. 2005).

Petitioner relies on Padilla v. Kentucky, 559 U.S. 356 (2010) ("Padilla claim"), asserting that his counsel was ineffective for failing to investigate and inform him that the offense to which he was pleading guilty would result in mandatory deportation.  (Dkt. 1 at 4.)  He contends that he would not have pleaded guilty if his counsel had so informed him.  (Id. at 9.)  The government argues that Petitioner's ineffective assistance claim under Padilla is factually unsupported, because both the plea agreement and the record of

---

[8] There is a requirement in the case law that a coram nobis petition not be presented with unreasonable delay.  See Mendoza v. United States, 690 F.3d 157, 159 (3d Cir. 2012) (affirming denial of coram nobis petition on basis of unreasonable delay when petitioner had waited some four years to allege that his counsel had rendered ineffective assistance).  That requirement is met here, because Petitioner did exercise reasonable diligence in filing his Section 2255 Motion within the one-year statutory limitation period applicable to such motions.  See 28 U.S.C. § 2255(f).

the plea hearing demonstrate that he was advised of the immigration consequences of his plea prior to pleading guilty.  (Dkt. 13 at 3-7.)

The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "A defendant has a Sixth Amendment right not just to counsel, but to 'reasonably effective assistance' of counsel."  United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The Supreme Court in Strickland has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687.

The appropriate measure of attorney performance is "reasonableness under prevailing professional norms."  Id. at 688.  A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  Courts must generally recognize the strong presumption that counsel has rendered adequate assistance

9

and that all significant decisions were made in the exercise of reasonable professional judgment.  Id. at 689; see Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999); Reese v. Fulcomer, 946 F.2d 247, 256-57 (3d Cir. 1991); United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

The second prong of the Strickland test requires a petitioner to show that counsel's deficient performance prejudiced the defense.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Strickland, 466 U.S. at 691.  The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Here, Petitioner seeks to challenge the validity of his guilty plea, based upon the collateral consequences that he later experienced regarding his immigration status.  The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970).  Where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "'was within the range of

competence demanded of attorneys in criminal cases.'"  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

Hill v. Lockhart holds that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same standard of attorney competence set forth in the first prong of the Strickland test.  474 U.S. at 58-59.  However, the Hill Court specifically held that where the collateral challenge is to a plea of guilty rather than a trial verdict, the "prejudice" prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id.; see Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995) (citing Hill).  In setting forth that standard, the Court in Hill emphasized the "fundamental interest in the finality of guilty pleas."  474 U.S. at 58 (citing United States v. Timmreck, 441 U.S. 780, 784 (1979)).

The Strickland Court further held that both the "performance" and the "prejudice" prongs must be established to meet the petitioner's burden, and that if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

466 U.S. at 697.

The petitioner in Padilla, a long-time lawful permanent resident of the United States, pleaded guilty to a drug-related charge that turned out to be a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i).  He claimed that his counsel not only failed to advise him of this consequence prior to his entering the plea, but also told him that he did not have to worry about his immigration status because he had been in this country for so long.  559 U.S. at 359.  The Supreme Court of Kentucky had denied Padilla postconviction relief on legal grounds, while assuming without deciding the truth of his allegations.  The Supreme Court granted certiorari, and held that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation."  Id. at 360.  Thus, ruled the Court, "[a]ccepting his allegations as true, Padilla has sufficiently alleged constitutional deficiency to satisfy the first prong of Strickland."  The Court added, "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the Strickland analysis.'"  Id. at 371 (quoting Hill, 474 U.S. at 62).  The essential ruling of Padilla was that "counsel must inform her client whether his plea carries a risk of deportation."  Id. at 374.

Padilla applies in this case.  Padilla was decided on March 31, 2010, which was before Petitioner in this case was charged and entered his plea of guilty to an Information on January 7, 2011.  (Information, crim. dkt. 26; Transcript of Plea Hearing, crim. dkt. 35.)  Thus, as the parties here correctly pointed out in their supplemental briefing, the

retroactivity decision in <u>Chaidez</u> does not affect our analysis except to recognize the continued validity of <u>Padilla</u> as a prospective new rule under the Sixth Amendment right to effective assistance of counsel.  (Dkt. 17 at 2-3; dkt. 18 at 2.)

The Court must accept the truth of a petitioner's non-frivolous factual allegations raising claims of ineffective assistance of counsel, and examine them to see if those claims conclusively satisfy both prongs of the <u>Strickland</u> test.  The Court, of course, can reject clearly frivolous claims, <u>Gov't of V.I. v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989), and dispose of vague or unelaborated assertions as insufficient.  <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977); <u>United States v. Dawson</u>, 857 F.2d 923, 928 (3d Cir. 1988).  In this action, examination of the record of the underlying criminal case shows conclusively that Petitioner cannot meet his burden of proof on either prong of the <u>Strickland</u> test as to his <u>Padilla</u> claim.

Petitioner was represented in his criminal case by Candace Hom, Esq., an experienced Assistant Federal Public Defender ("Defense Counsel").  Petitioner's Defense Counsel signed the written plea agreement along with his own signature.  (Dkt. 30 at 6.)  She accompanied Petitioner to the Rule 11 plea hearing, and was available throughout that hearing at counsel table with him.  (Dkt. 35 at 6.)

The Court, at the outset of that hearing, informed Petitioner:  "[Y]ou have your lawyer, Ms. Hom, there with you and she's available to you at all times.  If you should have any question or problem or if you simply want to stop at any point, please feel free

to confer with your attorney as much as you want, and any conference that you have with

your attorney will be subject to the attorney/client privilege.  It will be private." (Id. at

4.)[9]  The Court also reminded Petitioner that he was under affirmation, under penalty of

perjury, and the Court and counsel would be relying on the truthfulness of all the answers

he gave during the hearing.  (Id. at 5.)

The Court then proceeded to review with Petitioner, on the record, each portion of

his plea agreement to make sure that he was aware of its contents and understood its

meaning.  (Id. at 13-33.)  The plea agreement itself contained the following provision,

headed Immigration Consequences:

> Mory Diarrassouba understands that, if he is not a citizen of the United
> States, his guilty plea to the charged offense(s) will likely result in his being
> subject to immigration proceedings and removed from the United States by
> making him deportable, excludable, or inadmissible, or ending his
> naturalization.  The defendant understands that the immigration
> consequences of this plea will be imposed in a separate proceeding before the
> immigration authorities.  The defendant wants and agrees to plead guilty to
> the charged offense(s) regardless of any immigration consequences of this
> plea, even if this plea will cause his removal from the United States.  The
> defendant understands that he is bound by his guilty plea regardless of any
> immigration consequences of the plea.  Accordingly, the defendant waives
> any and all challenges to his guilty plea and to his sentence based on any
> immigration consequences, and agrees not to seek to withdraw his guilty
> plea, or to file a direct appeal or any kind of collateral attack[10] challenging

---

[9]  When quoting portions of transcript, we make clerical corrections without so noting,
but we make no material changes in the text.

[10]  The Court concludes, in addition to the Strickland analysis discussed here, that this
contractual waiver, contained in Petitioner's valid plea agreement, constitutes an independent
ground for dismissal of his current petition for a writ of error coram nobis, because the petition is
a collateral attack on his plea and conviction.  See United States v. Mabry, 536 F.3d 231, 236–37

his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

(Dkt. 30 at 4.)

The Court commenced our review of the plea agreement with Petitioner, during

the plea hearing, with the following exchange:

THE COURT:      Now, you read this entire agreement and discussed it with your lawyer before you signed it, yes?

DEFENDANT:      Yes, I did.

THE COURT:      Were you able to read it in English yourself?

DEFENDANT:      Yes, I did.

THE COURT:      Okay.  And you discussed it with your lawyer sufficiently to have her answer your questions before you signed it?

DEFENDANT:      Yes, I did.

THE COURT:      Good.  Then what I would like to do is just summarize it for you and ask you whether you're aware of these contents.  I'm not going to read the whole thing here in court but I do want to summarize the main points of it anyway.

DEFENDANT:      Yes.

THE COURT:      And my only question will be are you aware of these contents of your agreement.  We want to make sure that what we can read on the written document is actually what you understand, in your own mind, is your agreement.

DEFENDANT:      Yes.

(Dkt. 35 at 12-13.)

---

(3d Cir. 2008); Skeffery v. United States, No. 05-2, 2013 WL 1499422, at *2 (W.D. Pa. Mar. 22, 2013) (report and recommendation by Magistrate Judge), adopted, 2013 WL 1499415 (W.D. Pa. Apr. 10, 2013), aff'd, 532 Fed.Appx. 95 (3d Cir. 2013).

When the plea hearing discussion reached the section of the plea agreement

labeled "Immigration Consequences," quoted supra, Petitioner was asked and answered

as follows:

THE COURT:        ....  We've completed our discussion of the stipulations, Page 7 and
8.  Now we'll go back to the main body of the agreement.  And here we have a paragraph
about immigration consequences.  Mr. Rugg, could I impose upon you to make the
inquiry along those lines here?

PROSECUTOR:     Certainly, Your Honor.  The plea agreement notifies Mr.
Diarrassouba that the offense to which he's agreed to plead guilty will likely result in his
deportation or removal from the United States.

BY THE PROSECUTOR:

Q       Mr. Diarrassouba.

A       Yes?

Q       Do you understand that if you are not a citizen of the United States, your guilty
plea to the charged offense will likely result in your being subject to immigration
proceedings and removed from the United States?

A       Yes, I do.

Q       And have you consulted with your attorney about the possible immigration
consequences of your plea?

A       Yes, I do.

BY THE COURT:

Q       Now, Mr. Diarrassouba, you understand that Ms. Hom and her office are your
federal criminal defenders, right?

A       Yes.

Q       You understand they are not your immigration lawyer?

A      Yes, sir (sic).

Q      You would have the right to consult with an immigration lawyer but we can't provide you with an immigration lawyer.  Understand?

A      Yes.

Q      But you have discussed with Ms. Hom the fact that this case may result in the immigration authorities seeking deportation?

A      Yes.

Q      Okay.  And that is set forth in your plea agreement that you understand that.... Right?

A      Yes, ma'am.

(Id. at 29-30.)

Summing up at the end of the discussion about the plea agreement, on the record at

that hearing, the Court also asked Petitioner the following series of questions:

BY THE COURT:

Q      Have we accurately summarized your plea agreement as you understand that agreement, sir?

A      Yes, I do.

Q      Yes?  We have accurately summarized it for you?

A      Yes.

Q      Okay.  Is this your complete agreement in this case?

A      Yes, Your Honor.

Q      Has anybody tried in any way to force you to enter into this plea agreement?

A No, Your Honor.

Q Has anybody tried to force you to plead guilty rather than to maintain a not guilty plea?

A No, Your Honor.

Q Can you tell me, sir, at this time, are you fully satisfied with the advice and counsel and representation that Ms. Hom and her office are providing to you in this case?

A Yes, Your Honor.

Q Good.

THE COURT:  Then I do accept the plea agreement.

(Id. at 31.)

Yet again, before accepting Petitioner's guilty plea, the Court returned to the topic of deportation with him when describing some of the possible collateral consequences of sustaining a federal felony conviction.  There, Petitioner was informed and responded:

BY THE COURT:

Q Now the existence of a federal felony conviction -- and this would be a federal felony conviction -- the existence of that conviction can deprive a person of valuable civil rights, such as the right to vote, the right to serve on a jury, the right to hold public office, and the right to possess certain types of weapons, including firearms.  It can also negatively affect a person's eligibility for certain kinds of government benefit programs.  I can't advise you about any of that, but I do want to alert you to that possibility.  Understand?

A Yes, Your Honor.

Q And we've already talked about the likely immigration consequences if you're not a United States citizen, or indeed if you are, but certain deportation provisions apply. Understand?

A Yes, Your Honor.

Q      Any questions about any of that?

A      No, Your Honor.

(Id. at 36-37.)

Following all of that colloquy, and the additional topics required to be covered at a plea hearing under Rule 11 of the Federal Rules of Criminal Procedure, the Petitioner allocuted to a detailed factual basis and entered his plea of guilty to the charged offense. (Id. at 41-43.)  This Court accepted his guilty plea, stating as follows:

> The Court is fully satisfied with the responses throughout this hearing, in this matter of United States versus Mory Diarrassouba, and the Court finds that the defendant is fully competent and capable of entering an informed plea.  The Court does find that he is aware of the nature of this charge and the consequences of a plea of guilty on this charge.  The Court further finds that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact, containing each of the essential elements of the offense.  Therefore, his plea of guilty is accepted and he is now adjudged guilty of this offense.

(Id. at 41.)

Based on this record, the Court finds that Petitioner cannot establish that there was any deficient performance of Defense Counsel in advising him about the likely immigration consequences of his conviction on the charged offense.  Contrary to his current contention, that Defense Counsel had failed to inform him about the likelihood of deportation, he stated the exact opposite when he was testifying under penalty of perjury at his plea hearing.  This evidence entirely negates the "performance" prong of his Padilla claim under Strickland.

The record equally shows that the "prejudice" prong of his claim is lacking in proof.  Petitioner was specifically told by the prosecutor, at his plea hearing, that according to the plea agreement his guilty plea and conviction would likely result in deportation; yet he pleaded guilty at the conclusion of that same hearing.  Thus, the evidence fails to establish, as required under the Strickland/Hill "prejudice" prong, that if he had known of the likely deportation consequences, he would not have pleaded guilty and would have maintained his not guilty plea.[11]  Accordingly, the Petition must be denied.[12]

---

[11]  At the outset of the plea hearing, at the arraignment stage, when the Information was accepted by the Court for filing and docketing, Defense Counsel had entered a "not guilty" plea on Petitioner's behalf.  (Dkt. 35 at 10-11.)  The Court made clear to Petitioner, during the hearing, that he had a right to maintain his "not guilty" plea and that no one would be permitted to pressure him into changing his plea to a guilty plea.  (Id. at 33, 34-35.)

[12]  The Section 2255 Motion in this action, which we are treating as a petition for a writ of coram nobis at Petitioner's request, contained only one claim, which is the Padilla claim addressed in this opinion.  (Section 2255 Motion, "Ground One," dkt. 1 at 4.)  The procedural history of this action, summarized supra, describes that Petitioner purported to file a second Section 2255 Motion, containing two additional claims, but he failed to file one comprehensive Motion after being afforded notice and an opportunity to do so.  Therefore, we ordered that only the Padilla claim need be answered by the government, since that is the only claim properly before the Court for adjudication.  See n.7 supra.  Assuming arguendo that the two additional claims are before the Court to be decided in this action, it is clear that neither claim may be asserted on collateral challenge to the conviction, because each of them could have been asserted in a timely direct appeal, subject to the waiver of appeal rights contained in the plea agreement.  Both of those claims were merely claims of sentencing error, and Petitioner filed no timely appeal.  (See crim. dkt. 37.)  The first additional claim was an objection to the offense level calculation based on the stipulated loss amount; the second additional claim was an objection to the stipulated restitution amount.  (See Civil Action No. 12-3220, dkt. 1 at 6-7, 8.)  We do not address those claims further in this Memorandum Opinion.

## CONCLUSION

The Court will grant Petitioner's pending motion (dkt. 21), requesting that his Section 2255 Motion, filed in this action on April 16, 2012, be adjudicated as a petition for a writ of error <u>coram</u> <u>nobis</u> seeking to set aside Petitioner's guilty plea and conviction.

Upon substantive review of the petition for a writ of error <u>coram</u> <u>nobis</u>, the Court finds that the record in the Petitioner's criminal action conclusively demonstrates that it fails to establish a violation of the Sixth Amendment under <u>Strickland v. Washington</u> and <u>Padilla v. Kentucky</u>, as alleged.  Therefore, the petition for a writ of <u>coram</u> <u>nobis</u> must be denied.

The question whether to issue a Certificate of Appealability does not arise when adjudicating a <u>coram</u> <u>nobis</u> petition.  <u>See</u> <u>United States v. Baptiste</u>, 223 F.3d 188, 189 n.1 (3d Cir. 2000) ("Neither the statute making the writ of error coram nobis available in federal courts in criminal matters, <u>see</u> 28 U.S.C. § 1651(a), nor any Federal Rule of Appellate Procedure requires a certificate of appealability before an appeal may be taken, nor does such a requirement appear in the case law.").  The Court will issue an appropriate order and judgment.

      s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:  May 30, 2014